**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Leila Kasso,                                              No. 25-cv-3908 (KMM/DLM)

        Plaintiff,

v.                                                                      **ORDER**

City of Minneapolis,[1]

        Defendants.

---

This matter is before the Court on Defendant City of Minneapolis's ("the City") Motion to Dismiss. (Dkt. 6.) For the following reasons, the Motion is granted, and the Complaint is dismissed with prejudice.

## I.    BACKGROUND

This is one of multiple lawsuits brought by Plaintiff Leila Kasso pertaining to her employment as a police officer with the Minneapolis Police Department ("MPD"). This particular action relates to alleged unlawful treatment she experienced from her MPD superiors in April 2021. Specifically, Ms. Kasso alleges "discrimination, retaliation, unlawful disclosure of medical information, and hostile working conditions imposed by

---

[1] While Ms. Kasso's handwritten form Complaint names the "City of Minneapolis Police Department" as Defendant, the Court understands the sole defendant in this case to be the City of Minneapolis based on the captions of both the typed Complaint she attaches to the form Complaint, as well as her Response to this Motion. (*Compare* Dkt. 1 at 1, *with id.* at 6, *and* Dkt. 14 at 1.)

the City of Minneapolis and its Police Department during and around the Derek Chauvin criminal trial." (Dkt. 1 at 6.[2])

Ms. Kasso's allegations center on Christy Nelson, another MPD employee who "sat on the promotion board responsible for reviewing Sergeant applicants."[3] (*Id.* at 8 ¶ 17.) On or about April 19, 2021, while former MPD officer Derek Chauvin's criminal trial was concluding, Ms. Nelson ordered Ms. Kasso "to an underground basement five levels below ground with no backup, internet, radio communication, or means to call for help — despite the foreseeability of protests and riots," in contrast to "other light-duty officers [who] were assigned to safe, monitored locations[.]" (*Id.* at 7–8 ¶¶ 11–12.) Ms. Kasso did not receive a "meaningful opportunity to object, escalate, or secure assistance" prior to this assignment. (*Id.* at 8 ¶ 13.) Ms. Nelson also ordered Ms. Kasso "to wear a full MPD uniform in direct violation of MPD's Policy and Procedure Manual governing light-duty status." (*Id.* at 9 ¶ 16.) Later, Ms. Kasso was "forced into a desk assignment and prevented from returning to uniformed patrol duty," creating "a constructive restriction on her professional duties and career progression." (*Id.* at 8 ¶ 20.)

Ms. Kasso alleges that she was denied a reasonable accommodation under the ADA and that Ms. Nelson's assignments disregarded her "medical restrictions and her doctor's recommendations," but she does not specify the nature of her disability or allege that she requested an accommodation. (*Id.* at 7–8 ¶¶ 11, 14.) Ms. Kasso also alleges that Ms.

---

[2] Citations are to the ECF pagination.

[3] The Court sets aside any allegations made against individuals and entities that are not parties to this action.

Nelson's actions were discriminatory and retaliatory, and that when she "invoked her ADA rights, she was met with hostility, ridicule, and retaliation." (*See id.* at 8 ¶¶ 14, 17.) Moreover, Ms. Kasso claims that Ms. Nelson "unlawfully accessed [her] confidential medical information without her knowledge or consent, in violation of the ADA's confidentiality provisions, and used that information to influence adverse employment actions." (*Id.* at 8 ¶ 15.) According to Ms. Kasso, she was "denied promotions and advancement opportunities because of her disability[.]" (*Id.* at 8 ¶ 19.)

Around that time, Ms. Kasso formally requested a transfer to avoid "the hostile and retaliatory environment created by [Ms. Nelson] and others," but her request was denied "without justification[.]" (*Id.* at 8 ¶¶ 21.) Ms. Kasso also alleges that her "workplace was intentionally sabotaged: her office door was removed, her protective window shield was torn down, and her desk was ransacked." (*Id.* at 8 ¶¶ 22.) She understood these actions to be "deliberate and public signals that [she] was being singled out, humiliated, and denied equal dignity and opportunity." (*Id.* at 9 ¶ 23.)

Ms. Kasso subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commissioner ("EEOC"). (*Id.* at 7 ¶ 8.) On July 10, 2025, she received a Notice of Right to Sue from the EEOC, which provided her with 90 days to file a lawsuit. (*Id.* at 7 ¶¶ 9–10; *see* Dkt. 1-1 (Notice).)

Ms. Kasso then filed this lawsuit on October 10, 2025 asserting five claims against the City: (1) ADA discrimination; (2) ADA retaliation; (3) "ADA Confidentiality Violation"; (4) an "Equal Protection Violation" under 42 U.S.C. § 1983; and (5) a claim for intentional infliction of emotional distress. (Dkt. 1 at 9.) She seeks compensatory

damages, punitive damages, and attorney's fees. (*Id.*) On November 21, 2025, the City filed its Motion to Dismiss. (Dkt. 6.)

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the Complaint to be true and make all reasonable inferences from those facts in the light most favorable to the plaintiff. *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). But courts need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts alleged. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). While courts must construe a pro se complaint "liberally," the complaint must still allege sufficient facts to support the claims. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## III.    DISCUSSION

The City raises multiple grounds for dismissal. The Court focuses on the merits of each of Ms. Kasso's claims and concludes that her pleading is insufficient to plausibly state any claim for relief.

**A.    Count I: ADA Discrimination**

To establish a prima facie case of ADA discrimination, a plaintiff must show that she "(1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability." *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018) (quotations omitted). "As a threshold matter," Ms. Kasso must allege that she has a disability within the meaning of the ADA. *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 410 (8th Cir. 2018). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).

Ms. Kasso does not sufficiently allege that she has a disability as defined by the ADA. In fact, the Complaint does not even describe symptoms, treatment, or diagnoses from which the Court could infer that she has a qualifying disability. Instead, the Complaint only includes conclusory statements that Ms. Kasso has a disability. (Dkt. 1 at 6 (stating that "Plaintiff was denied reasonable accommodation for her disability" and that some events described in the Complaint occurred while Ms. Kasso was "recovering from a disability").) Apart from these conclusory statements, *Glick*, 944 F.3d at 717, the Complaint lacks any factual allegations to plausibly support such a finding and thus fails to state a claim for ADA discrimination.

**B.    Count II: ADA Retaliation**

To establish an ADA retaliation claim, a plaintiff "must establish that she engaged in protected activity, suffered an adverse employment action, and there is a causal

connection between the two." *Stephens v. U.S. Env't Servs. LLC*, 167 F.4th 495, 499–500 (8th Cir. 2026) (quotation omitted). "An employee engages in protected activity when she opposes an action based on a reasonable belief that her employer has engaged in discriminatory conduct[.]" *Foster v. Time Warner Ent. Co., L.P.*, 250 F.3d 1189, 1194 (8th Cir. 2001) (cleaned up). A good-faith request for a reasonable accommodation also constitutes protected activity. *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003).

Ms. Kasso fails to allege facts that she engaged in any protected activity, and she only makes a conclusory claim that MPD engaged in discriminatory conduct. The closest the Complaint comes to alleging any protected activity is that Ms. Kasso "was denied reasonable accommodation required under the ADA." (Dkt. 1 at 7 ¶ 11.) But the Court cannot reasonably infer from this statement that Ms. Kasso requested an accommodation, let alone one that was reasonable. This is especially true given that it is her burden to do so. *Cf. Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 (8th Cir. 2006) (stating that a plaintiff raising a failure-to-accommodate claim under the ADA bears the initial burden of demonstrating he requested a reasonable accommodation). Without a plausible allegation that she engaged in protected activity, Ms. Kasso cannot state claim for ADA retaliation.

## C.    Count III: ADA Confidentiality

The ADA limits employers' ability to obtain and access certain employee medical information. 42 U.S.C. § 12112(d). For example, an employer cannot require an existing employee to conduct a medical examination or inquire whether the employee has a disability unless it is "job-related and consistent with business necessity." *Id.* § 12112(d)(4)(A). Even when the employer has access to certain medical information, it is

subject to confidentiality restraints because, under the ADA, "information obtained regarding the medical condition or history of the [employee] . . . is treated as a confidential medical record[.]" *Id.* § 12112(d)(3)(B) (text); *see id.* § 12112(d)(4)(C) (incorporating protections for current employees). The plaintiff must also establish that a § 12112(d)(4) violation caused an adverse employment action. *Cossette v. Minn. Power & Light*, 188 F.3d 964, 970–71 (8th Cir. 1999).

The entirety of the Complaint's allegations as to an ADA confidentiality claim are that "Christy Nelson unlawfully accessed [Ms. Kasso's] confidential medical information without her knowledge or consent, in violation of the ADA's confidentiality provisions, and used that information to influence adverse employment actions." (Dkt. 1 at 8 ¶ 15.) This statement is entirely conclusory and is insufficient to satisfy Ms. Kasso's burden to plausibly state a claim to relief. The Complaint does not allege any facts regarding the protected information at issue, Ms. Nelson's access of that information, how it was used to influence adverse employment actions, or what those adverse actions were. Without more, this claim must also be dismissed.

**D.      Count IV: Equal Protection**

Ms. Kasso also alleges that her rights to equal protection were violated because she was treated differently from her similarly situated peers. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person . . . the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotation omitted). "[T]he first step in an equal protection case is determining whether the

7

plaintiff has demonstrated that [she] was treated differently than [others] who were similarly situated to [her]." *Plaintiff A v. Park Hill Sch. Dist.*, 97 F.4th 586, 592 (8th Cir. 2024) (quotation omitted). "The second step is to decide whether the unequal treatment resulted from 'intentional or purposeful discrimination.'" *Doe v. Anoka Cnty.*, 776 F. Supp. 3d 756, 778 (D. Minn. 2025) (quoting *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994)).

Because the Complaint names the City as the sole defendant, the Court understands Ms. Kasso's § 1983 claim as a *Monell* claim.[4] Generally, municipalities cannot be held vicariously liable under § 1983 for the conduct of its employees and claims against them are instead "limited to conduct for which the municipality is itself actually responsible." *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994). Under *Monell*, "[a] municipality can be liable under § 1983 if an action pursuant to official municipal policy of some nature caused a constitutional tort." *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (quotations omitted). To state a claim against a local government under § 1983, the plaintiff must allege that the constitutional or statutory violation "resulted from (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Id.* (cleaned up). The plaintiff "must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Id.* (quotations omitted and cleaned up).

---

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Even assuming the Complaint adequately alleged that Ms. Nelson or any other individual at MPD violated Ms. Kasso's constitutional rights, it does not identify or describe a policy, custom, or deliberate indifference to a failure to train or supervise on the part of the City from which any violation stemmed. So, Ms. Kasso's equal protection claim must also be dismissed for failure to state a claim.

**E.      Count V: Intentional Infliction of Emotional Distress**

All that remains is Ms. Kasso's state law claim of intentional infliction of emotional distress ("IIED"). District courts have supplemental jurisdiction over state law claims when they are "so related to" the federal claims raised. 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction over a state law claim when the court dismisses the federal claims. *Id.* § 1367(c)(3). Here, because the Court dismisses each of the federal claims, the Court declines to exercise jurisdiction over the state law claim. Therefore, the Court dismisses the IIED claim without prejudice.

**F.      Dismissal**

"A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice." *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019) (citing *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)). Dismissal with prejudice may be appropriate if an amendment is futile. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021).

Given that the Court bases dismissal on the dearth of factual allegations, dismissal without prejudice is appropriate. However, the City has raised serious and persuasive concerns that, in addition to the insufficiency of the pleadings, Ms. Kasso's Complaint was

filed too late to comply with the statute of limitations governing Ms. Kasso's ADA claims. *See Ahmed v. Bd. of Governors of Fed. Rsrv. Bank*, No. 24-cv-16 (DWF/DLM), 2024 WL 3300314, at *2 (D. Minn. July 3, 2024) ("Once a person receives the right-to-sue letter, they have 90 days to file a lawsuit against their employer. A lawsuit filed after the 90-day window must be dismissed as untimely.") (citation omitted).[5] Ms. Kasso should therefore be aware that even if she fixed the pleading errors on which the dismissal is based, a new lawsuit asserting claims that are clearly time-barred would likely be a futile endeavor. *See* Fed. R. Civ. P. 11(b)(2) (barring court filings that include frivolous arguments).

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendant City of Minneapolis's Motion to Dismiss (Dkt. 6) is **GRANTED**; and

2. Plaintiff Leila Kasso's Complaint (Dkt. 1) is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: June 22, 2026                                          *s/Katherine M. Menendez*
                                                             Katherine M. Menendez
                                                             United States District Judge

---

[5] While this 90-day period can be subject to equitable tolling, *see Hill v. John Chezik Imports*, 869 F.2d 1122, 1123 (8th Cir. 1989), there has not been a showing that it applies in this case.

10